UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:

    Madelon Oko,

              Debtor.

----------------------------------------------------------x

Marc A. Pergament

              Plaintiff,

    -- against --

Precision Sounds DJ's, Inc. and
Douglas OKO,

              Defendants.

----------------------------------------------------------x

<u>For Publication</u>

Case No.: 8-04-82696-478

Chapter 7

Adv. Pro. No. 8-05-8928-478

## MEMORANDUM DECISION

*Appearances:*

Weinberg Gross & Pergament LLP
*Attorneys for the Chapter 7 Trustee*
By: Marc A. Pergament, Esq.
400 Garden City Plaza
Garden City, New York 11530

Kalb & Rosenfeld PC
*Attorneys for Defendant Douglas Oko*
By: Robert C. Reichelscheimer
283 Commack Road
Commack, New York 11725

Hon. Dorothy Eisenberg, United States Bankruptcy Judge

Madelon Oko (the "Debtor"), filed her Chapter 13 petition on April 22, 2004, and the case was converted to one under Chapter 7 on November 18, 2004. Marc A. Pergament, the Chapter 7 Trustee (the "Plaintiff" or the "Trustee"), commenced this adversary proceeding against Precision Sounds DJ's, Inc. ("Precision"), and its sole shareholder, Douglas Oko ("Mr. Oko" or the "Defendant"), the Debtor's son (collectively, the "Defendants"), on November 8, 2005. The Trustee's suit against Mr. Oko alleges that fraudulent conveyances were made to him by the Debtor, and that Mr. Oko was the alter ego of Precision, and as such the corporate veil between them should be pierced.

The Trustee alleges in his complaint that within a year before Debtor filed for bankruptcy, from about October 2003 up to and including the petition date, the Debtor transferred a total of $66,180.00 from her checking account to the defendants, for no apparent consideration. Precision did not file an answer, or nor did it appear at the pre-trial conferences. Due to Precision's default the Court entered a judgment against it on May 15, 2006 for $76,955.63, which included the amount of the transfer, interest, and legal fees pursuant to New York Debtor Creditor Law ("DCL") (the "Default Judgment"). The Plaintiff now seeks to pierce the corporate veil and hold Douglas Oko personally responsible for the Default Judgment that was entered against Precision.

The issue now before the Court is whether Douglas Oko is the alter ego of Precision such that he should be found personally liable for the judgment entered against Precision. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O), and 11 U.S.C. §§ 510, 541, 544, 548 and 550 and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure and § 270 et. sec. of the New York Debtor Creditor Law ("DCL"). The following constitutes the Court's

findings of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTS

The Defendant is a self-employed freelance disc jockey ("DJ"). He had been doing business under the name Precision Sounds DJ's since at least April of 1998. In February of 2002, on the advice of his accountant, he incorporated his business for "personal protection" and formed Precision. Until the business was closed in early 2005, Mr. Oko was the sole shareholder, officer, and director. At the July 7, 2008 hearing Mr. Oko testified that he provided the necessary equipment for the startup of Precision. He also testified that he did not deposit any money into a bank account of Precision Sounds when the corporation began. The earliest bank corporate bank statement of Precision in the court record, from April 2002, stated that the March 2002 balance was $100.00. Mr. Oko also had a personal bank account with a small balance.

At the July 7, 2008 hearing the Debtor testified that over a period of several months, beginning in autumn of 2003, around six months before her bankruptcy filing, she provided funds to Precision using checks from her personal bank account. The funds that she gave her son were derived from the sale of her home on October 29, 2003. Debtor stated that she did so whenever her son would make a verbal request for financial assistance for Precision. These funds were used to help pay business expenses of Precision, such as payroll, rent, and other requirements to keep the business afloat.

Despite these payments, the Debtor did not have a legal interest in the business. The individual payments by the Debtor were not earmarked for any specific corporate expenses, and the schedules annexed to her bankruptcy petition did not list any money owed to her from Precision. She had no written agreement for repayment with Precision nor did she receive any

3

promissory note with respect to the funds that she provided to Precision. The Defendant did not keep a ledger of the amounts that his mother provided, nor did he keep one for the funds that he paid to any employee or business expense. Additionally, the Debtor testified that she considered the payments to be gifts, and did not expect to be repaid.

Over the entire course of the existence of the corporate bank account, checks were written for an innumerable amount of non-corporate expenses. Precision paid for the expenses of the Debtor and her husband, including mortgage payments, car payments, life insurance premiums, medical bills, utility bills and $5,564.65 for a fifty-inch television set. Although he took no paychecks, Mr. Oko withdrew funds from the corporate account for his personal expenses as he saw fit. For example, Precision paid for his gym membership and made payments on his behalf to the Suffolk County Department of Probation due to an unrelated criminal conviction of the Defendant. There were also countless checks made to cash, for personal expenses of both Mr. Oko and his parents.

Mr. Oko testified that he kept records in the form of customer contracts, a computer spreadsheet, and a record book, but that they were all disposed of when the corporate offices were vacated in early 2005. At the time the records were disposed of, the corporation was still in the process of winding down operations. The evidence before the Court shows that the records are unrecoverable, and the Defendant never formally dissolved the corporation, which ultimately ceased operations in the middle of 2005.

During the time that it operated, Precision provided DJs, dancers and the like for approximately one-hundred and fifty to two hundred parties per year. The clients were mostly private individuals, who each paid by check or by cash. The dancers and other employees were paid for each job, effectively functioning as independent contractors, as Mr. Oko would issue

IRS Form 1099s to them. Precision had no permanent employees other than Mr. Oko. Although the Debtor listed Precision as an employer on her petition, she testified that she was never an officer or employee of Precision. Similarly, Mr. Oko's father listed Precision as an employer on a mortgage application even though he had never worked for Precision, nor had he been paid by the business.

## DISCUSSION

*a. The Standard for "Piercing the Corporate Veil"*

"The general rule is that a corporation exists independently of its owners as a separate legal entity." *Goscienski ex rel. Frier v. Larosa* (*In re Montclair Homes*), 200 B.R. 84, 99 (Bankr. E.D.N.Y. 1996); *see Morris v. New York State Dept. of Taxation and Fin.*, 82 N.Y.2d 135, 140 (1993). The liability of shareholders is usually limited to the amount of their investments, and shareholders are not personally liable for debts or liabilities of the corporation itself. *See In re Montclair*, 200 B.R. at 99; *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991); *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966). In light of the general rule, most courts are generally reluctant to impose liability on the shareholders for the actions of the corporation.

However, if a corporation is liable for a certain obligation, under certain circumstances, a party can persuade the court to "pierce the corporate veil," thus imposing the corporate obligations on its owners. *Old Republic Nat'l Title Ins. Co. v. Moskowitz*, 747 N.Y.S.2d 556, 558 (N.Y. App. Div. 2002); *Morris v. New York State Dept. of Taxation and Fin.*, 82 N.Y.2d 135, 140-141 (1993) ("The doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation.").

A court addressing a situation where it may "pierce the corporate veil" will analyze the facts and the law on a case-by-case basis. *See Balmer v. 1716 Realty LLC*, 2008 U.S. Dist. LEXIS 38113, 12 (E.D.N.Y. May 9, 2008); *Morris v. N.Y. State Dept. of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993). "Courts will reluctantly disregard the corporate form and hold shareholders personally liable for the acts or debts of a corporation in the interests of justice and whenever necessary to prevent fraud or achieve equity." *In re Montclair*, 200 B.R. at 99; *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53-54 (2d Cir. 1984); *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656-57, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976). "[C]ourts usually pierce the corporate veil where . . . the owners of the corporation misuse the corporate form to accomplish their own personal affairs instead of the corporation's business." *In re Montclair*, 200 B.R. at 99.

A plaintiff who wants to hold the owners of a corporation personally liable for corporate obligations must show (1) that the owners of the corporation exercised complete domination or control concerning the transactions at issue; and (2) that such domination was used to commit a fraud or a wrong against the plaintiff which resulted in harm. *See Badian v. Elliott*, 165 Fed. Appx. 886, 891 (2d Cir. 2006); *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) *Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988), cert. denied, 488 U.S. 852, 109 S. Ct. 136, 102 L. Ed. 2d 109 (1988); *Morris v. N.Y. State Dept. of Taxation & Fin.*, 82 N.Y.2d 135, 141-142 (1993); *Millennium Constr., LLC v. Loupolover*, 2007 NY Slip Op 8201, 1-2 (N.Y. App. Div. 2d Dep't 2007).

*b. Should the Corporate Veil Between Precision and the Defendant Be Pierced?*

Among the factors tending to show domination and control, and the ones which are relevant to this corporation in this case, are (i) absence of corporate formalities such as election

of directors, issuance of stock and maintenance of corporate records, (ii) inadequate capitalization, (iii) use of corporate funds for personal rather than corporate purpose and (iv) the payment or guarantee of debts of the corporation by the owners or by another related corporation. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991); *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600-01 (2d Cir. 1989); *Orenbuch v. N. Shore Health Sys.*, 250 F. Supp. 2d 145, 150-151 (E.D.N.Y. 2003); *see also In re Casale*, 62 B.R. 889, 897-98 (Bankr. E.D.N.Y. 1986), *aff'd*, 72 B.R. 222 (E.D.N.Y. 1987).

In the present case, the Defendant Douglas Oko did not bother with corporate formalities. As the sole director, officer, and shareholder of Precision, the record shows that he did not hold any formal meetings or keep corporate minutes or other corporate records. Precision apparently did not have any full time employees other than Mr. Oko, notwithstanding the independent contractors he hired from time to time to perform at the parties and events that he was hired for. Although Mr. Oko testified that he did keep some records, he was not able to show the court a single slip of paper evidencing corporate activity, having apparently thrown away all of his records and the corporate computer before the filing of the Debtor's bankruptcy case. With the exception of Mr. Oko's testimony at the July 7, 2008 hearing and checks made payable to him or from him to others from the corporate bank account, no evidence was presented that showed that any corporate records for Precision ever actually existed. Besides a corporate name on a checkbook, there was no "corporate separateness" between Precision and Mr. Oko.

With regards to capitalization, the record shows that the Defendant failed to properly capitalize his business when it was formed. He testified that he did not put money into a bank account when he formed the business. Although Mr. Oko testified that he did provide other capital contributions in the form of equipment to get the corporation started, he could not point to

any documentary or other physical evidence regarding the type, quantity or value of whatever equipment he may have provided. When asked about the equipment at the hearing, the Defendant testified that he disposed of the equipment when the corporation closed because it was valueless. He could not state how much he paid for them originally, what funds he used to pay for them, or how much the value of the equipment decreased during the life of Precision.

Defendant also used the funds of Precision to pay his own personal debts and obligations, as well as those of his parents. Mr. Oko withdrew funds from the corporate bank account as if it was his own and the funds were used to pay for an incalculable amount of his personal expenses, such as his gym membership and his obligations to the Suffolk County Probation Board due to his criminal conviction. Additionally, he made payments on behalf of his parents for their mortgage, car payments, medical bills, and home entertainment systems. Although Defendant testified that he considered the payments to his parents to be repayments of the monies that his mother had lent to him, some of those payments were made as early as May of 2002, which was more than a year before his mother began making her contributions to Precision's corporate obligations. No ledger was kept by himself or his parents evidencing the true amount of monies that were transferred between them. The evidence shows that Mr. Oko dominated and controlled every facet of Precision's existence and operations. He used the corporate bank account as his own private checking account. Precision had no separate corporate existence. Precision and Mr. Oko were one and the same.

Douglas Oko, by his domination of Precision resulted in harm to Precision, and to creditors of this Debtor's bankruptcy estate. It has been stated that domination of a corporation is not enough, and that New York law requires a showing that "the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or

injustice against plaintiff, which resulted in plaintiff's injury." *Balmer v. 1716 Realty LLC*, 2008 U.S. Dist. LEXIS 38113, 21-22 (E.D.N.Y. May 9, 2008); *see* Morris, 82 N.Y.2d at 141-42; Passalacqua, 933 F.2d at 137-39. If a company is unable to pay the debts, claims, and obligations pending against it due to an individual's domination of the business, then a plaintiff has likely been injured. See, e.g., *Balmer v. 1716 Realty LLC*, 2008 U.S. Dist. LEXIS 38113, 21-22 (E.D.N.Y. May 9, 2008); *Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 827, 628 N.Y.S.2d 855 (N.Y. App. Div. 1995).

As discussed above, the record is clear that the Defendant used the assets of Precision to pay his own personal obligations, and those of his parents. The facts show that the Defendant accepted money for the corporation from the Debtor, which could have been recoverable by the Plaintiff for the benefit of creditors of the Debtor's bankruptcy estate. He drained the assets of Precision to pay his own and his parents' personal expenses, and thus he depleted any assets with which the corporation could pay off the corporation's creditors, including the Plaintiff with respect to the default judgment obtained against Precision. Based on the totality of the circumstances, the Defendant cannot use the corporate form to shield himself from the obligations of Precision which resulted due to his inappropriate domination and control of the business.

## **CONCLUSION**

Pursuant to the above findings of fact and conclusions of law, the Court finds that Douglas Oko is the alter ego of Precision and, in the interest of justice, the corporate veil should be pierced, and Douglas Oko be held personally responsible for the Plaintiff's judgment against Precision in the amount of $76,955.63.

Dated: October 6, 2008
       Central Islip, New York

                                          ***s/ Dorothy Eisenberg***
                                          Honorable Dorothy Eisenberg
                                          United States Bankruptcy Court